Murphy, Ernest B., J.
The plaintiff, Ernest S. Hayeck (Ernest), brought this four-count claim against the defendants, Fruit Sever Realty Corporation (FSRC), Paul G. Hayeck and Helen L. Hayeck as Co-Executors of the Estate of George N. Hayeck, Paul G. Hayeck, Albert G. Hayeck, George E. Hayeck and Helen L. Hayeck, alleging fraud, deceit, self-dealing, and breach of fiduciary duty in connection with the management of Fruit Sever Associates. The defendants now move this court to enforce the parties’ Memorandum of Understanding (Memorandum) and enter Judgment in accordance with the terms of their Memorandum agreement.
After a hearing on the motion, and for the following reasons, the defendants’ Motion to Enforce the Memorandum of Understanding and for Entry of Final Judgment is ALLOWED.

FINDINGS OF FACT

The following facts are taken from the hearing and the parties’ affidavits. This lawsuit concerns a dispute among family members who are involved in various capacities in the ownership and management of Fruit Sever Realty Corporation (FSRC). FSRC was formed in 1971 to acquire, hold, improve, develop, and operate multi-unit apartment buildings located at 6, 8, 10, 11, and 12 Sever Street, Worcester, Massachusetts. At formation George N. Hayeck (George) was the sole general partner of FSRC, 5% interest, with a limited partner interest of -45%. Ernest S. Hayeck (Ernest) owned the remaining 50% limited partner interest in FSRC. George amended the partnership agreement, creating FSRC as a general partner with a 2% interest in 1996. Thereafter, George had a 3% general partner interest individually and a 45% limited partner interest and FSRC had a 2% general partner interest. After George’s death, on July 4, 1997, his interest transferred to his wife Helen L. Hayeck (Helen), with his 3% general interest automatically converting to a limited partner interest. Ernest became unhappy with the FSRC management and filed this lawsuit.
On September 20, 2000, Ernest filed the complaint initiating this lawsuit alleging fraud, deceit, self-dealing, and breach of fiduciary duty by the co-executors of George’s estate and Paul, Albert, George and Helen Hayeck, each individually, in connection with the *445 management of FSRC. The parties entered mediation on July 21, 2006 with Brad Honoroff, Esq. (Honoroff) as the mediator. Both parties were represented by counsel during the mediation. The mediation concluded with the drafting of a Memorandum of Understanding (Memorandum) which was signed by all of the parties and the counsel for both sides. The Memorandum states,
In full settlement of all matters between the plaintiff and defendants, including but not limited to all claims that arise or may arise from the above action the parties agree upon the following:
1. For the consideration of the total sum of Four Million. Dollars ($4,000,000) to be paid by the Plaintiff, Defendants will convey or cause to be conveyed all ownership interest, limited and general, in Fruit Sever Associates. Said partnership holds as its asset a 132-unit apartment building in Worcester, Massachusetts. The Plaintiff will purchase the interest subject to an existing mortgage on the building in the approximate amount of One Million Five Hundred Sixty Thousand Dollars ($1,560,000), but free from or held harmless from other liabilities, including any liability to any management company.
2. Counsel will perform due diligence and prepare settlement and closing papers for an intended closing date on or before August 22, 2006. Defendants will make available the premises for inspection as well as financial and other documents necessary to the operation of the partnership. The parties will conduct such inspections at mutually agreeable times and confidentially.
3. In addition, by said closing, the parties will execute all remaining paperwork to close the estate of Florence Hayeck as well as execute a purchase and sale agreement for the purchase by Plaintiff of the Robin Road property from Hayeck Building and Really Co, Inc. at the appraised value of Twenty Thousand Dollars ($20,000) as previously agreed upon.
4. Counsel will prepare and have executed any other formal settlement documents, including mutual releases of all actions between the parties and stipulations of dismissal of all claims in the above action with prejudice and without costs.
Thereafter the Memorandum was signed by Ernest S. Hayeck, William Hogan (attorney for the plaintiff), Helen Hayeck (for FSRC), Paul G. Hayeck, Helen L. Hayeck, Albert G. Hayeck, George E. Hayeck, and J. Michael Conley (attorney for the defendants) on July 21, 2006.
After the mediation, the parties began drafting the necessary closing documents and settlement agreements to finalize the transaction. On August 15, 2006, Ernest’s attorney forwarded a proposed “Settlement Agreement,” “Exhibits,” and “Closing Agenda” by electronic mail. On. August 21, 2006, Ernest’s attorney was still working on the due diligence and questioned three deed issues in an electronic mail to the defendants’ attorney. The deed issues were resolved, but the parties had not agreed on the proposed “Settlement Agreement” by the closing date set in the Memorandum, August 22, 2006. A jury trial was scheduled for August 23, 2006, but despite their failure to meet the closing date, the parties agreed, on August 22, 2006, to remove the case from the trial calendar. The plaintiffs attorney, by letter dated August 30, 2006, claimed that the Settlement Agreement’s indemnify provision “is in complete contradiction to any standard closing document.” In response, the defendants’ attorney modified the indemnification language, despite their claims that the language was “not atypical in situations where the purchasing party has been an owner in the entity in which he is purchasing an interest.” The revised language, sent by a September 12, 2006 letter and September 13, 2006 Settlement Agreement Fax sent to the plaintiffs attorney, limits the indemnification provision, “and presumably will address [the defendants’] concerns.”
On September 21, 2006, the Court issued a 30-day Nisi Dismissal Order requiring the parties to file an agreement of stipulation by October 21, 2006.[2] On September 29, 2006, the Memorandum was filed with the court. Ernest, thereafter, engaged new counsel and on October 19, 2006 made a motion to strike or vacate the court’s Nisi Order. Without contesting the motion, the defendants reserved their right to enforce the Memorandum and the court vacated the Nisi Order without prejudice. The defendants now seek to enforce the Memorandum.

CONCLUSIONS OF LAW

“Memorandums of understanding” are typically enforced through a motion for summary judgment, therefore, the court will treat this motion accordingly. See Correia v. DeSimone, 34 Mass.App.Ct. 601, 601 (1993) (seeking to enforce a memorandum of understanding the defendant made a motion for summaiy judgment). Summaiy judgment shall be granted when there are no genuine issues as to any material fact and when the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corp., 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summaiy judgment record entitled the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). Once *446 the moving party establishes the absence of a triable issue, the party opposing the motion must respond with evidence of specific facts establishing the existence of a genuine dispute. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The nonmoving party cannot defeat the motion for summaiy judgment by resting on his or her pleadings or mere assertions of disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
The issue before this court is whether the Memorandum of Understanding between the parties created an enforceable contract. Ernest first asserts that the Memorandum is not an enforceable settlement agreement because there are a “long list of material terms which were unresolved.” It is a well settled principle of law, however, that a contract is enforceable when the parties agree to the material terms and intend to be bound by the agreement. Situation Mgmt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 878 (2000); McCarthy v. Tobin, 429 Mass. 84, 87 (1999) (“The controlling factor is the intention of the parties”). The subsequent actions of the parties are indicative of the parties’ true intentions at the time of drafting. Tiffany v. Sturbridge Camping Club, Inc., 32 Mass.App.Ct. 173, 175 n.4 (1992).
In this case, the parties intended the Memorandum to be a final agreement. The parties resolved all of the significant economic issues during the mediation by determining the price of both properties and reducing this to writing. The plaintiff, therefore, is foreclosed from alleging that the Memorandum is invalid in his efforts to seek a one million dollar decrease in the purchase price, as acknowledged in the phone message left for the defendants’ attorney. In addition to signing the Memorandum in the presence of the mediator, the parties acknowledged that the Memorandum was a “full settlement of all matters between the plaintiff and defendants.” The plaintiff regarded the Memorandum as a final agreement because in compliance with the Memorandum’s terms the plaintiffs attorney sent a closing agenda and settlement agreement to the defendants’ attorney approximately two weeks after the mediation terminated. Tiffany, 32 Mass.App.Ct. at 175 n.4 (the parties’ contractual intent is evidenced by their subsequent actions).
More specifically, the plaintiff claims that the negotiations were incomplete because the Memorandum failed to resolve the “settlement and closing papers,” the “remaining paperwork to close the estate of Florence Hayeck,” the “purchase and sale agreement for the purchase ... of the Robin Road Property,” and “other formal settlement documents.” Rosenfield v. United States Trust Co., 290 Mass. 210, 217 (1935) (parties had entered into an agreement to agree, which imposed no obligation, because material terms relating to cost were still unresolved). The plaintiff claims that the parties would typically conduct the due diligence prior to finalizing the sale of an ongoing business and they did not negotiate the material elements of “representations, warranties and indemnifications” during the mediation. Even the failure to precisely specify material terms, will not preclude finding that a binding contact was entered. Hunneman Real Estate Corp. v. Norwood Realty, Inc., 54 Mass.App.Ct. 416, 421 (2002). This court must therefore determine whether the parties agreed upon all of the “material terms” in the Memorandum of Understanding.
The plaintiffs reliance on the unpublished Massachusetts Appeals Court decision is unfounded because the facts are so readily distinguishable. See PDC-EL Paso Meriden, LLC v. Alstom Power, Inc., 66 Mass.App.Ct. 1101, 2006 WL 902253, *3 (2006). The Meriden agreement, which involved the construction of a power plant, “call[ed] for further negotiations on key facets of material terms.” The Appeals Court would not enforce the agreement because the parties failed to define a work schedule for this construction project. Id. at *2. Whereas, in this case, the parties agreed to the material terms and the supplemental terms were standard real estate issues surrounding the closing documentation for the sale of property.
On the contrary, the outstanding issues in this case are similar to a real estate case decided by the Appeals Court that enforced the parties’ “offer to purchase” as a binding agreement. Goren v. Royal Investments, Inc., 25 Mass.App.Ct. 137, 141 (1987). The Goren court found that all “significant economic issues were resolved in the preliminary agreement.” Id. The additional matters, not decided by the parties, were standard items associated with due diligence including the “state of title, conformance with local law, condition of the premises, extension provision to allow seller time to remove title defects . . . disclaimer of implied warranties.” Id. The court stated that the additional matters “are not without importance and may, on occasion, be the subjects of bargaining. They are however, subsidiary matter and norms exist for their customary resolution.” Id.
This court disagrees with the plaintiffs proffered contentions regarding any unresolved terms because customary practices exist, like in the Goren case, to substantiate the Memorandum. The proposed “Settlement Agreement,” faxed to the law offices of Barry R. Smith, P.C. on September 13, 2006 (Settlement Agreement), memorialized the standard practices associated with transferring business property. For instance, the Memorandum’s reference to “formal settlement documents” foresaw that customary, standard practices were necessary to wind up the partnership before the multi-unit apartment business could be transferred. The Settlement Agreement, therefore, documents the standard practices and assures that the proper interests are transferred at the closing in compliance with the Memorandum. Therefore, the plaintiffs contention that the Memorandum’s reference to the drafting of a “settlement agreement” *447 foreclosed it from being a final and enforceable agreement is unavailing.
Next, the plaintiff contends that the Memorandum is not final because it anticipates the execution of a future “purchase and sale agreement” that was not negotiated. The plaintiffs argument, however, lacks merit because the execution of a purchase and sale agreement is a customary practice. Goren, 25 Mass.App.Ct. at 141 (court can enforce a customary practice for a subsidiary matter when the material terms have been decided). Moreover, the Settlement Agreement calls for the execution of a standard form, the “Greater Boston Real Estate Board Standard Form Purchase and Sale Agreement,” for the transfer of the Robin Road properly.
According to the parties’ submissions, the only term disputed before the closing date was the indemnification clause contained within the Settlement Agreement, paragraph 1 (i) “Buyer Acknowledgment.” The Settlement Agreement’s indemnification clause states, “ESH [Ernest H. Hayeck] hereby indemnifies and holds harmless HLH [Helen L. Hayeck], all other transferors, hereunder and their agents, attorneys and representatives for and from any responsibilities and liabilities hereunder in relation to the property, except for claims for which HLH and transferors hereunder and their agents, attorneys, and representatives had specific knowledge and that HLH and said transferors hereunder and their agents, attorneys, and representatives failed to disclose to the partnership.” This court construes the Memorandum to require a customary indemnification clause. Therefore, the court finds that the Settlement Agreement is a reasonable indemnity provision considering that the parties were both part of the partnership prior to the sale. Therefore, the plaintiff, ESH, agrees to indemnify defendant HLH and all other transferors in the course of ordinary prudence for any specific knowledge that HLH, and said transferors, had or reasonably should have known and failed to disclose to the partnership before the sale. Post v. Belmont Country Club, 60 Mass.App.Ct. 645, 651 (2004) (in construing a contractual indemnification clause, the court must examine the parties’ positions and intentions when drafting the clause).

ORDER

Based on the foregoing reasons, it is hereby ORDERED that the defendants’ Motion to Enforce the Memorandum of Understanding and for Entry of Final Judgment is ALLOWED and the Settlement Agreement is the customary terms used to implement the Memorandum.

The following is a transcribed telephone message from Ernest’s attorney (Hogan) to the defendants’ attorney (Michael Conley), “Michael, Bill Hogan . . . Ernie Hayeck . . . cannot go forward with the deal at the price of 4 million bucks. But that Ernie Hayeck absolutely wanted to buy them out, but that all the people he has had look at the deal, tell him that the property is worth, at this point in time, somewhere 4 million at tire top 5 million including the mortgage ... other than definitively stating that he wants to resolve this thing, but that he cannot do it at 4 million bucks, or he won’t do it at 4 million, because he can’t. But my sense is that if you took the 4 million and took half of what the mortgage is, I think the mortgage is 1 million and one-half, and you get that down to 3.2. I think at 3 million, there is no question that Ernest Hayeck would either buy or sell.”