Fremont-Smith, Thayer, J.
The plaintiffs, Rhonda DeMarco Fazio and Salvatore Fazio (together “the Fazios”), bring this action against Bank of America based on a loan the Fazios entered into that was secured by a mortgage on their home at 11 Winship Drive, Wakefield, Massachusetts (the “Property”). The Fazios’ complaint alleges breach of agreement, reformation/declaratoiy judgment, breach of the obligation of good faith and fair dealing, breach of agreement (third-party beneficiary), and two counts of violations of the Massachusetts Consumer Protection Act. Before the court is the Fazios’ motion for a preliminary injunction to prevent foreclosure on their home. After a hearing, and consideration of the material provided by the parties, this Court finds that the Fazios have not demonstrated that they have a substantial likelihood of success on the merits. Therefore, the Fazios’ motion for a prefiminaiy injunction is DENIED.
FINDINGS OF FACT
“By definition, a preliminary injunction must be granted or denied after an abbreviated presentation of the facts and the law.” Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616 (1980). Consequently, the preliminary findings of fact below are based on the affidavits, attached exhibits, and motions furnished by the parties, as well as reasonable inferences from that evidence.[3]
On October 26, 2006, the Fazios entered into a loan agreement with New Century Mortgage Corporation (“New Century”) for $596,000. In conjunction with the loan, the Fazios executed an adjustable rate note (the “Note”), and as security for their obligations under the Note, granted a mortgage to New Century on the Property (the “Mortgage”). On October 31, 2006, New Century recorded the Mortgage with the Middlesex County (South) Registry of Deeds. The Uniform Residential Appraisal Report lists the value of the Property at the time of the loan as $675,000.
The Fazios’ loan was a “stated income” loan, also referred to as a “no documentation” loan, in which the underwriter for the lender does not require any documentation of the borrower’s income, expenses, or employment. The Uniform Residential Loan Application, which is signed by each of the Fazios, lists their monthly income as $14,506 per month, or $174,072 annually, coming from Sal’s Plastering, a business the Fazios owned. The income on the loan application is signed under the pains and penalties of perjury. The Fazios allege this listed monthly income amount is “ridiculous on its face and grossly inaccurate.” Attached to the Affidavit of Rhonda DeMarco Fazio is a 2006 US Return of Partnership Income form for Sal’s Plastering which lists the business’ gross income at $67,744 (or $5,654 per month). At the closing on October 26, 2006, the Fazios signed a Borrower’s Certification and Authorization, which stated they made truthful statements in their loan application, including the information regarding the amount and source of employment and income. The Fazios also signed an Occupancy Affidavit and Financial Status at the closing, which was notarized, which stated there had been no significant changes in their financial status and the loan application reflected their current financial position.
The Fazios also allege that they were told their loan was a fixed-rate loan, and they would soon be able to refinance into another fixed-rate loan with a lower interest rate. The Uniform Residential Loan Application lists the applied for loan as a 3/27 adjustable rate mortgage with an initial interest rate of 7.425%. The Note the Fazios signed states conspicuously at the top of the first page, “ADJUSTABLE RATE NOTE.” The Note disclosed that the initial interest rate was 7.375% and the manner in which the interest rate would adjust based on the six-month London Interbank Offered Rate Index (“LIBOR”) and an added margin of 6.050%. At the closing the Fazios also received a Federal Truth-in-Lending Disclosure that made clear the monthly mortgage payments would adjust. The Fazios also were provided with a 3/27 ARM disclosure statement and acknowledged they had received the Consumer Handbook on Adjustable Rate Mortgages. The 3/27 ARM disclosure describes the features of the adjustable rate mortgage, including how the interest rates and monthly payments can change based on the *82 LIBOR index plus an added margin. All of these documents were signed by the both of the Fazios, although Mr. Fazio states that he is illiterate.[4]
At some point in 2007, the Fazios defaulted on their mortgage. On July 1, 2008, servicing of the Fazios’ loan transferred from Avelo Mortgage, LLC to Litton Loan Servicing, LP (“Litton”). On July 10, 2008, Litton sent a letter to the Fazios notifying them that Litton had assumed responsibility for servicing the loan. After Litton assumed responsibility for servicing the loan, the Fazios asked several times to modify their mortgage, but they repeatedly failed to provide the necessary documentation.[5] On August 28, 2009, New Century executed an assignment of mortgage regarding the Mortgage on the Fazios’ property in favor of Bank of America, National Association as successor by merger to LaSalle Bank National Association, as Trustee under the Pooling and Servicing Agreement dated as of March 1, 2007, GSAMP Trust 2007-HE2. On or about September 3, Bank of America filed with the Land Court a complaint to foreclose the Mortgage. On December 16, 2009, Bank of America recorded the Assignment of Mortgage with the Registry. Bank of America was scheduled to foreclose the Mortgage on the Property on April 5, 2010. On April 1, 2010, the Fazios initiated this action and on April 2 this Court allowed a temporary restraining order preventing the foreclosure on the Property until a hearing and decision on this motion.
CONCLUSIONS OF LAW
In determining whether to grant a preliminary injunction, this Court must perform the familiar three-part balancing test articulated in Packaging Industries Group, 380 Mass. at 616-17. First, the court must evaluate the moving party’s claim of injury and its likelihood of success on the merits. Id. at 617. Second, it must determine whether failing to issue a preliminary injunction would subject the moving party to irreparable injury. Id. at 617 & n.ll. Third, “(i]f the judge is convinced that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party.” Id. at 617. In balancing these factors, “(w]hat matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party’s chance of success on the merits. Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue.” Id.
The Fazios argue that their loan is presumptively unfair, and the contract is illegal, unconscionable, fraudulent, voidable and unenforceable. Additionally, the Fazios assert that as a lender in Massachusetts, New Century had an obligation to extend a loan only where it reasonably believed the borrower had the ability to repay the loan according to the scheduled repayment terms. See Commonwealth v. Fremont, 452 Mass. 733 (2008). The combination of independently legal terms may render a loan unfair under Chapter 93A if the combination constitutes an unsound lending practice and in essence dooms the borrower to foreclosure. Id. at 743. Thus, any mortgage loan secured by the borrower’s principal dwelling should be “presumed to be structurally unfair” if it possesses the following four characteristics:
(1) The loan is an adjustable rate mortgage with an introductory period of three years of less;
(2) The loan features an introductory or “teaser” rate for the initial period that is at least two percent lower than the fully indexed rate, unless the debt-to-income ratio is 55 percent or above, then this criterion is eliminated entirely;
(3) The borrower has a debt-to-income ratio that would have exceeded 50 percent if the lender’s underwriters had measured the debt, not by the debt due under the teaser rate, but the debt due under the fully indexed rate (with an exception for student loans); and
(4) The loan-to-value ratio is 97 percent or the loan carries a substantial prepayment penalty or a prepayment penalty that extends beyond the introductory period.
Commonwealth v. H&R Block, 2008 WL 5970550, *43-47 (Mass.Super. 2008) (unpublished) [25 Mass. L. Rptr. 92], modifying the standard outlined in Commonwealth v. Fremont Investment & Loan, 23 Mass. L. Rptr. 567, *11 (Mass.Super. 2008).
The court in Fremont Investment & Loan declined to find that “stated income” application loans were, on that basis alone, presumptively unfair, even though the evidence in that case indicated that such loans were far more prone to foreclosure. 23 Mass. L. Rptr. 567 at * 11. “Stated income” loans become more prone to foreclosure only if the applicant (or the broker with the acquiescence or ignorance of the applicant) falsely inflates his income or assets. 23 Mass. L. Rptr. 567 at *11. The court acknowledged that while such loans may not be prudent for a bank to issue because they fail to protect the bank from the risk of fraud, “a borrower may not fairly complain that a bank was unfair to him by giving him an opportunity to lie on his loan application without any meaningful risk of getting caught.” Id. However, the fact that a loan is a “stated income” loan is relevant to the determination of whether the loan was unfair. H&R Block, 2008 WL 5970550, *16. “Stated income” loans may be unfair or deceptive if the lender used this vehicle to issue loans based on loan applications that it knew or should have known were false, and thereby encouraged or tolerated the borrower’s false representations. Id. Here there is no allegation that New Century knew of any misrepresentation of the Fazios’ income, willfully blinded itself to mortgage brokers who brought loans to it that knowingly inflated the borrower’s income, or encour *83 aged and invited borrowers to submit false information in loan applications.
The Fazios urge this Court to apply the modified Fremont test using a monthly income of $5,654 based on the submitted 2006 US Return of Partnership Income for Sal’s Plastering. However, the loan was issued to the Fazios personally and not the business. Furthermore, the Checking Account statements for Sal’s Plastering with Eastern Bank that were submitted to this Court appear to indicate a higher income than what is listed on the 2006 US Return of Partnership Income. Additionally, the Fazios signed numerous documents declaring their combined monthly income to be $14,506 and that their loan was adjustable. In the absence of fraud, a person who signs a written agreement is bound by its terms regardless of whether the person reads or understands those terms. Tiffany v. Sturbridge Camping Club, Inc,, 32 Mass.App.Ct. 173, 175 n.5 (1992). Even if Mr. Fazio is illiterate and could not read the documents he signed, the Fazios chose not to hire an attorney or any other professional to review their loan documents after the closing. The Fazios acknowledged receiving two copies of the Notice of Right to Cancel, which informed them that they had three days from the date of the closing to cancel the transaction, and they did not invoke this right. The Fazios have failed to present by affidavit sufficient facts to justify their allegations that their monthly income is substantially less than $14,506 and they were unaware that their loan was adjustable. Since the Fazios made multiple assertions that their monthly income was $14,506 and there is no evidence that New Century knew or should have known this representation was false, this income will be used to determine whether the mortgage should be “presumed to be structurally unfair” under the modified Fremont test.
In applying the Fremont test, the Fazios have failed to show that their loan satisfied all four of the criteria. The record indicates that the Fazios’ debt-to-income ratio would not have exceeded 50 percent had New Centuiy measured the debt by the fully indexed rate. Using the Fazios’ calculation of a fully indexed rate, their monthly debt obligations would total $6,318.23, or 44% of their gross income. The loan also did not cany a 97 percent loan-to-value ratio.[6] Based on the appraisal of the Property, which listed the market value as $675,000, the loan-to-value ratio was 88.3 percent. Nor have the Fazios proffered evidence that the combination of features contained in their Note constituted an unsound lending practice which in essence doomed them to foreclosure. Therefore, the Fazios have not demonstrated that they have a substantial likelihood of success on the merits.
The Fazios also have not demonstrated that they have a substantial likelihood of proving Litton did not comply with the Home Affordable Modification Program requirements. The Fazios allege they requested to have their loan modified and never received the required written decline. However, the evidence in the record directly contradicts this allegation. In letters dated November 20, 2008, January 6, 2009, July 22, 2009, and October 28, 2009, Litton advised the Fazios that their request for a modification were denied because the Fazios failed to provide additional information. For this reason, the Fazios’ request for injunctive relief must be denied.
ORDER
For the foregoing reasons, it is hereby ORDERED that the Fazios’ motion for a preliminary injunction be DENIED.

 Nile Fazios did not submit a motion or memorandum in support a motion for a preliminary injunction. As such, this Court only has the Fazios’ Attested Complaint and the Affidavit of Rhonda DeMarco Fazio with the Attached Exhibits to consider in support of the Fazios’ position.

 There is no allegation that Mrs. Fazio, who also signed all the documents, is illiterate.

 By letters dated November 20, 2008, January 6, 2009 and July 22, 2009, Litton acknowledged receiving a request for assistance from the Fazios, but stated that they were unable to offer them an alternative workout solution because the Fazios never responded to requests for additional required information. In a letter dated October 28, 2009, Litton acknowledged another request for assistance but informed the Fazios that their loan did not meet the guidelines provided by the investor.

 In the alternative, the mortgage could meet the structurally unfair standard if the loan carried a substantial prepayment penalty or a prepayment penalty that extended beyond the introductory period; neither of these penalties are present in the Note.